Filed 8/30/22  In re R.Z. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re R.Z., a Person Coming Under the Juvenile Court Law. | C094471 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.Z.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD241006) |

Father of the minor appeals from the juvenile court's dispositional order entered on June 7, 2021. (Welf. & Inst. Code, § 395.)[1] Father contends the juvenile court violated his due process rights by appointing a guardian ad litem without substantial evidence of his mental incompetence. The matter was fully briefed on April 14, 2022.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

Finding sufficient evidence that father was incapable of understanding the nature and purpose of the proceeding or was unable to assist counsel in a rational manner, we will affirm the juvenile court's order.

## BACKGROUND

On December 8, 2020, the Sacramento County Department of Child, Family and Adult Services (Department) filed a section 300, subdivision (b) petition on behalf of the then 10-month-old minor based on mother's history of untreated substance abuse and father's untreated anger management problems that impaired their judgment and ability to care for the child. The minor was detained and placed with the maternal grandmother. The juvenile court appointed counsel for mother and father and ordered supervised visitation. It also explained the process to both parents and answered father's questions.

Both mother and father agreed that mother had a drug problem and father had an anger management problem, although father claimed he naturally spoke loudly and denied cursing at and sending argumentative texts to social workers. Father began courses on parenting and anger management.

At the February 1, 2021 jurisdiction hearing, father's counsel indicated they were requesting a contested hearing or trial. Father interjected that he believed it was too early for trial and he wanted to respond to the petition first. The juvenile court explained to father that if he wanted to challenge the allegations in the petition, his options were to have a hearing with testimony, which the juvenile court called a trial, or a hearing with argument but no testimony. Father continued to assert that he wanted to contest the allegations, he did not want a trial, and no one was explaining the process to him. The juvenile court asked if they could go forward that day, but father's counsel said she understood that father had additional evidence he wanted to present, which she told father needed to be presented at a trial, so they were not prepared to go forward that day. The trial court scheduled another hearing to determine whether the matter would be set for a contested jurisdiction hearing.

At a pretrial hearing, the Department said father's behavior had created some problems with visitation and that it would be asking that father participate in a mental health examination in order to tailor services for him. Father's counsel said they were ready to confirm trial dates, but father indicated he wanted a new attorney appointed because his current attorney had not helped him. The juvenile court heard and denied father's *Marsden*[2] motion and the parties then discussed visitation. The juvenile court suspended father's in-person visits due to father's behavior, limiting him to virtual visits until the conclusion of trial.

Father retained private counsel. However, retained counsel moved to be relieved due to a breakdown in communication. The juvenile court granted the motion and reappointed counsel for father. Father then asked to represent himself, but the juvenile court denied the request based on concern that father would continue to be disruptive. As the discussion proceeded, father argued with the juvenile court, insisting his court-appointed attorney was not properly representing him. Father's court-appointed counsel said she had hoped it would help for the juvenile court to speak with father, but given his continuing behavior counsel requested the appointment of a guardian ad litem, stating that father was unable to assist her with the case.

The juvenile court cleared the courtroom and held another *Marsden* hearing and a guardian ad litem hearing. At the conclusion of the hearings, the juvenile court denied father's *Marsden* motion and appointed a guardian ad litem, finding that father was incapable of understanding the nature and purpose of the proceeding and was unable to assist counsel in a rational manner.

Following notice from this court and no opposition from the parties, we unsealed 15 pages of previously sealed reporter's transcripts in the appellate record, including five

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118; see also *In re Samuel* (2021) 69 Cal.App.5th 67, 73, fn. 3 [a comparable mechanism is recognized in dependency proceedings].

pages from the February 22, 2021 in camera *Marsden* hearing, four pages from the March 25, 2021 in camera *Marsden* hearing, and all the pages from the March 25, 2021 in camera guardian ad litem hearing. (Cal. Rules of Court, rules 8.45-8.47.) With the unsealed pages available to the parties, we gave them an opportunity to file supplemental briefs addressing whether the juvenile court erred in appointing a guardian ad litem. The Department filed a supplemental brief but father did not.

Additional relevant facts are set forth in the discussion.

## DISCUSSION

Father contends the juvenile court violated his due process rights by appointing a guardian ad litem without substantial evidence of his mental incompetence.

"[T]he primary concern in section 300 cases is whether the parent understands the proceedings and can assist the attorney in protecting the parent's interests in the companionship, custody, control and maintenance of the child." (*In re Sara D.* (2001) 87 Cal.App.4th 661, 667.) When the juvenile dependency court has knowledge of a party's incompetence, it has an obligation to appoint a guardian ad litem. (*In re A.C.* (2008) 166 Cal.App.4th 146, 155.) "A person may be found incompetent if the person was either incapable of understanding the nature and purpose of the proceeding *or* unable to assist counsel in a rational manner." (*In re M.P.* (2013) 217 Cal.App.4th 441, 452, original italics; see *In re James F.* (2008) 42 Cal.4th 901, 910.) On the other hand, "[v]oluntary barriers to communication with counsel on the part of a defendant who was able to cooperate [but has elected not to] do not demonstrate incompetence." (*People v. Mendoza* (2016) 62 Cal.4th 856, 879.) The test is " 'competency to cooperate, not cooperation.' " (*People v. Clark* (2011) 52 Cal.4th 856, 893.)

"Before appointing a guardian ad litem for a parent in a dependency proceeding, the juvenile court must hold an informal hearing at which the parent has an opportunity to be heard. [Citation.] The court or counsel should explain to the parent the purpose of the

4

guardian ad litem and the grounds for believing that the parent is mentally incompetent. [Citation.] If the parent consents to the appointment, the parent's due process rights are satisfied. [Citation.] A parent who does not consent must be given an opportunity to persuade the court that appointment of a guardian ad litem is not required, and the juvenile court should make an inquiry sufficient to satisfy itself that the parent is, or is not, competent. [Citation.] If the court appoints a guardian ad litem without the parent's consent, the record must contain substantial evidence of the parent's incompetence." (*In re James F., supra*, 42 Cal.4th at pp. 910-911.)

Father admits that during the pendency of the case he was argumentative and obstreperous in court and belligerent and threatening to social workers and the minor's caretaker, the maternal grandmother. Nevertheless, he asserts that although he was belligerent and rude, he was not incompetent, nor was he unable to assist counsel because of a lack of mental capacity.

There is sufficient evidence that father was incapable of understanding the nature and purpose of the proceeding or was unable to assist counsel in a rational manner.

At the February 1, 2021 hearing, father complained that he did not want to go to trial but wanted to respond to the allegations in the petition. The juvenile court explained to father that if he wanted to challenge the allegations in the petition, his options were to have a hearing with testimony, which the juvenile court called a trial, or a hearing with argument but no testimony. Father's court-appointed counsel indicated she had also explained this to father. Father continued to assert that he wanted to contest the allegations, he did not want a trial, and no one was explaining the process to him. The juvenile court asked if they could go forward that day, but father's counsel said she understood that father had additional evidence he wanted to present, which she told father needed to be presented at a trial, so they were not prepared to go forward that day. The trial court put the matter over.

5

At the February 22, 2021 pretrial hearing, when the Department's counsel indicated she was ready to confirm trial, father asked, "trial for what?"

Father's counsel informed the juvenile court during the first *Marsden* hearing that on more than one occasion she had explained the process to father. She also explained to father what they had to do to contest the allegations in the petition. Father agreed that his attorney told him if he wanted to challenge the allegations in the petition he would need to go to trial, but father wanted to challenge the allegations before then. Father said his counsel was telling him the process but not really telling him the process, adding that his attorney never told him he could contest the allegations in the petition. The juvenile court directed father's counsel to again explain the process to father.

At the second *Marsden* hearing, counsel explained that it was difficult to have a conversation with father. Father had prepared a 100-page response to the section 300 petition and asked the juvenile court how he could contest the allegations if his counsel would not file his paperwork. The juvenile court explained to father that he would be permitted to present evidence at trial. Father said he thought he could file his 100-page response, but the juvenile court explained: "No, that's not how it works. You don't turn in a hundred page manifesto of how you feel about the case. You testify in court. You testify under oath. The attorneys ask you questions. You don't turn in a manifesto and say, 'This is my version. This is my version of the events. I want you to read all hundred pages.' "

Father complained that the petition only contained allegations. The juvenile court said that was the reason they were going to have a trial.

The guardian ad litem hearing followed the second *Marsden* hearing. After the juvenile court explained the purpose of the guardian ad litem hearing and heard from father, the juvenile court told father he would have to let them talk, that if he kept interrupting he would have to leave the hearing. At that point the reporter's transcript indicates father was continually speaking at the same time the juvenile court was

speaking. When the juvenile court asked father's counsel why she thought the appointment of a guardian ad litem would be appropriate, counsel said it seemed either (1) father does not understand the proceedings, and counsel had a deep concern that he really did not understand, or (2) whatever was going on with him in terms of his functionality, it presented such a significant barrier to communication that father could not assist her with the case. The reporter's transcript indicated that father continued to talk at the same time his counsel was speaking. Counsel said father's attorneys had spent about four to five hours just to explain that a trial was the method to challenge the allegations in the petition. At that point in the guardian ad litem hearing, because father kept using profanity, the juvenile court asked him to leave and father left the courtroom.

Father's counsel said she still did not think father understood that the way to challenge the allegations in the petition was by trial. She described father's 100-page document as father's legible and illegible notes, some of which made no sense. She tried to explain to father that she could not file the document and it was not the way to present the information he wanted to present, but counsel believed father was incapable of hearing anything she had to say. Counsel also said they probably spent hours on why father wanted a section 388 petition for modification. She told father it was too early for a section 388 petition, but according to counsel, father did not understand that such a petition was not legally available to him at that point.

Father contends this case is like *In re Samuel A.*, *supra*, 69 Cal.App.5th 67, which involved a parent's unruly and obstructive behavior. In that case efforts to address the parent's behavior, such as calling security, issuing restraining orders, and appointing different counsel, were unsuccessful. (*Id.* at pp. 83, 74-77.) But *Samuel A.* is distinguishable because there the parent had participated in a mental health evaluation and had been found not to have an underlying mental health condition. (*Id.* at p. 79.) And the juvenile court in that case found that the parent's lack of cooperation was deliberate and strategic. (*Id.* at pp. 77, 79.) It appointed a guardian ad litem as a way to

7

move the case along and ensure that the parent had the benefit of counsel during the reunification period. (*Ibid*.) The court of appeal reversed, holding that a guardian ad litem may not be appointed for a legally competent, albeit exceedingly difficult, parent. (*Id*. at p. 85.)

Here, unlike in *Samuel A*., there was no finding that father did not have an underlying mental health condition, no finding that father's conduct was deliberate and strategic, and here father's appointed counsel expressed concern that father did not understand the proceedings. There is substantial evidence in this case that father did not understand the proceedings. In any event, here there is sufficient evidence that father could not assist his counsel.

### DISPOSITION

The juvenile court's dispositional order is affirmed.


                                                       /S/
                                            MAURO, J.

We concur:


/S/
ROBIE, Acting P. J.


/S/
DUARTE, J.

8